## Greene, Auditor v. Ballard.

(Decided March 23, 1917.)

### Appeal from Franklin Circuit Court.

1. **States—Warrants or Claims Against State.**—The auditor, under authority conferred by sections 143, 340a, Kentucky Statutes, has the legal right to refuse to issue a warrant for the payment of any claim presented to him, the correctness of which he may question, and on the advice of the Attorney General conclude to contest.

2. **Witnesses—Authority to Compel Attendance—Fees—Mileage.**—The circuit court in which one indicted for a felony is tried is without statutory authority to order his witnesses, whether following a change of venue, because of his poverty or otherwise, summoned at the cost of the Commonwealth, or to order the payment of the fees or mileage of such witnesses out of the state treasury as claims against the Commonwealth.

3. **Witnesses—Authority to Compel Attendance—Fees—Mileage.**—The payment by the Commonwealth of the fees and mileage of the defendant's witnesses in a felony case cannot be compelled by an order of the court in which he is tried, upon the ground that authority to do so is conferred by Bill of Rights, section 11, Constitution, which declares: "In all criminal prosecutions the accused has the right to have compulsory process for obtaining witnesses in his favor." By "compulsory process" is meant the right to invoke the aid of the law and of the courts to compel the personal attendance of witnesses at the trial, when they are within the jurisdiction of the court. That is, the defendant, for the purpose of procuring the attendance of his witnesses, is en-

titled to such coercive means as the courts, by virtue of their inherent powers or sanction of the law, are permitted to employ. If a witness fail to attend court in obedience to a subpoena or recognizance, he may be compelled to do so by order of the court for his arrest, required to give bond to attend the trial as a witness, or punished for contempt on account of his failure to do so. As the law of this state does not sanction the payment of the defendant's witnesses by the Commonwealth, the courts of the state are without power to require it to do so; and to hold otherwise would license persons charged with crime, under pretense of poverty, to, in nearly every instance, procure the attendance of their witnesses at the expense of the Commonwealth; which would swell the cost of criminal prosecutions to such an extent as to financially embarrass the state.

M. M. LOGAN, Attorney General, and CHAS. H. MORRIS, Assistant Attorney General, for appellant.

J. M. BENTON for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE SETTLE—
Reversing.

The single question presented for decision by this appeal is whether, the circuit court in which a defendant indicted for a felony is tried, has the authority to order his witnesses summoned at the cost of the Commonwealth and to allow their claims for attendance and mileage as claims against the Commonwealth, and certify them to the Auditor of Public Accounts for payment as such.

The appellee, John W. Ballard, by his petition, filed in the Franklin circuit court, alleged, in substance, the following facts: That following the return in the Breathitt circuit court of an indictment found by the grand jury of Breathitt county against one Elihu Allen, charging him with the crime of murder, by an order of that court entered April 10th, 1916, the venue of the prosecution was changed and the case transferred to Clark county for trial in the Clark circuit court, and thereafter set for trial in that court; that the homicide occurred in Breathitt county and the defendant's witnesses resided in that county and Perry county, some of them at a distance of 80 miles from Winchester, the county seat of Clark county; that the defendant and his witnesses were poor people without money to defray the expense of attending his trial and that the attendance and testimony of such witnesses was indis-

pensably necessary to enable the defendant to make his defense to the charge in the indictment. The facts last mentioned were shown by the affidavit of the defendant, Allen, filed before the day on which the case was set for trial. The petition further sets forth that upon the filing of the defendant's affidavit, the judge of the Clark circuit court entered an order directing that his witnesses be subpoenaed at the expense of the Commonwealth, and that when so subpoenaed, they be allowed by the clerk to claim their per diem and mileage, payable by the Auditor in the same manner as those of witnesses summoned by the Commonwealth are paid; that subpoenas were thereafter issued for the defendant's witnesses containing the statement that the witnesses named therein would be paid by the Commonwealth, and were duly served by the officers to whom they were delivered; that the claim of each of the several witnesses thus summoned for the defendant was, by an order of the circuit court duly entered at the term of their attendance, allowed as a claim against the Commonwealth, and certified as such to the Auditor for payment. The names of these witnesses and the per diem and mileage allowed each of them are set out in detail in the petition, followed by an allegation of the sale, assignment and delivery of the claims by the holders thereof to the appellee; and the further allegation of the presentment by the latter of the claims, amounting in the aggregate to $190.32, to the Auditor for payment, and his refusal to pay same or any part thereof. The particular ground upon which appellee rests his right to compel of the Auditor payment of these claims is concisely stated in the petition, as follows:

"Petitioner says that in view of the statements made in said affidavit of said Elihu Allen, and which statements this plaintiff believes were true, the judge of the Clark circuit court had the legal right, and it was his duty, to enter said order and to authorize the witnesses in behalf of said Allen to be summoned and to direct their per diem and mileage to be paid by the Commonwealth; and that in no other way could said judge have secured to said Allen the fair trial guaranteed to him by the constitution of the state or given him the benefit of that provision of the constitution which entitled him to have 'compulsory process' for obtaining witnesses in his favor."

It was also alleged in the petition that for twenty-five years or more, it has been the custom of the circuit judges of the state, and of its auditing and paying officers, under such circumstances as appear in the instant case, to construe the constitution and statutes so as to allow and pay the claims of the defendant's witnesses as a part of the costs of prosecution chargeable to the state; which custom and contemporaneous construction so long continued as to ripen into a law, under and by virtue of which appellee was entitled to payment by the state of the claims assigned him by Allen's witnesses.

The petition concludes with a prayer for a writ of mandamus commanding the Auditor to issue his warrant upon the Treasurer in favor of appellee for the aggregate amount of the claims, $190.32.

The appellant, Auditor, filed a general demurrer to the petition, and, at the same time, an answer, which, without waiving the demurrer, denied that the witness claims in question constituted a part of the cost, growing out of the prosecution of Allen, chargeable to the Commonwealth, or that upon the affidavit of Allen or otherwise, the circuit court had the legal right to enter an order allowing defendant's witnesses to be paid as Commonwealth's witnesses, or that Allen could not have had a fair trial as guaranteed by the constitution without imposing upon the Commonwealth the cost of procuring the attendance and testimony of his witnesses. The answer also denied the alleged contemporaneous construction of the constitution and statutes on the part of circuit judges of the state, or of the auditing and paying officers of the state, whereby such claims as these had been allowed and paid as claims against the Commonwealth; and alleged that if such custom or construction had ever obtained it was unauthorized and a mistake on the part of the officers, both judicial and ministerial. By the concluding paragraph of the answer it was denied that upon presentation of the claims, with a copy of the order of the circuit court allowing and certifying them, it became, or was the duty of the Auditor to issue the warrant demanded therefor, or that he was without right to refuse to issue same. It will be observed that the denials of the answer, save that denying the contemporaneous construction alleged in the petition, raised only issues of law, and the issue of fact as to the question of contemporaneous construction was

waived by appellee because of his willingness to rest his right of recovery on the law of the case. Hence, he interposed a general demurrer to the answer, following which the case was submitted on the demurrers to the petition and answer. By the judgment entered, the court overruled appellant's demurrer to the petition, sustained that of appellee to the answer, and granted the writ of mandamus prayed in the petition. Complaining of that judgment, the Auditor has appealed.

As preliminary to consideration of the principal question to be determined, it is deemed proper to say that the Auditor has the right to refuse to issue a warrant for the payment of any claim presented to him, the correctness of which he may question, and on the advice of the Attorney General conclude to contest; such right being conferred by sections 340a and 143, Kentucky Statutes, the first providing:

"Auditor may contest claims allowed by courts.—That the order of any of the courts of this Commonwealth now authorized by law to approve and allow the fee bills, settlements, creditors, charges, and claims against the Treasury of any of the officers of the Commonwealth, or of other persons having claims against the Treasury, shall only be regarded as *prima facie* evidence of the correctness and legality of such fee bill, settlement, credit, charge, or claim; and such order shall in no case be treated as a judgment or be made conclusive against the state; but the Auditor, if he believe such fee bill, settlement, credit, charge, or claim is fraudulent, erroneous, or illegal, may, with the advice of the Attorney General, refuse to pay, and may contest the same in the Franklin circuit court, which said court shall have jurisdiction of all suits or proceedings against the Auditor to compel the payment of claims against the Treasury."

Section 143, *supra,* provides:

"Warrant—Claimant may be required to cite law.—A warrant of the Auditor upon the treasury shall state upon its face the date, amount, and the name of the person to whom payable, and on what account, and out of what fund to be paid; and shall not be issued unless the money to pay the same has been appropriated by law; and he may require any claimant to state on the face of his claim the law under which it is payable."

It is apparent that these sections overthrow appellee's contention, suggested, but not seriously urged, that it was the imperative duty of the Auditor to issue the warrant demanded upon presentation of his claim, supported by an attested copy of the circuit court's order allowing it and certifying it to him for payment.

As stated in the beginning of the opinion, the important question to be determined is, had the Clark circuit court authority, under the law, to allow the claims of Allen's witnesses as a part of the costs of the prosecution chargeable to the Commonwealth, and payable out of its treasury? If, as held by the Franklin circuit court in awarding the writ of mandamus, such authority was possessed by the Clark circuit court, the Auditor, notwithstanding his primary right to withhold the warrant demanded until the validity of the claims could be passed on by the Franklin circuit court, must issue it as required by the judgment of the Franklin circuit court. The basic principle urged in support of the alleged power of the Clark circuit court to allow the claims in question as against the Commonwealth, is found in the bill of rights, section 11, constitution, which declares:

"In all criminal prosecutions the accused has the right . . . . to have compulsory process for obtaining witnesses in his favor."

It is argued by appellee's counsel that the right of the defendant in a criminal prosecution to have compulsory process for obtaining his witnesses, being guaranteed by the constitution, cannot be denied him; and that the meaning of the above provision of the constitution is, that when a defendant in a criminal prosecution is so situated, that only by the state paying the expenses of his witnesses, can their attendance be secured, it follows that the state must bear that expense, in order to secure to him his constitutional rights.

It is admitted by counsel for appellee that the foregoing interpretation given by him to the provision of the constitution in question has never been adopted by this court, but argued that it has, in several cases, tacitly approved the practice of requiring the payment by the Commonwealth of the per diem and mileage of the defendant's witnesses, in the situation occupied by Allen in the prosecution against him. An examination of the cases cited by counsel, will show that in none of them was the appellate court called on to construe the

provision of the constitution, *supra,* nor to determine whether it, in letter or spirit, authorizes the circuit court to impose upon the Commonwealth the cost of procuring the attendance of the defendant's witnesses, where he was unable from poverty or other cause to otherwise do so. In other words, the question here presented was not raised or passed on.

In Hancock v. Parker, 100 Ky. 143, the last case cited by appellee's counsel on the question under consideration, one Warfield, who stood indicted in the Fayette circuit court for a felony, desiring to use the testimony of Gatlin, a convict in the penitentiary, in his behalf, filed an affidavit in the Fayette circuit court showing the confinement of Gatlin in the penitentiary and the importance to him of the latter's testimony, moved for an order requiring Hancock, the warden of the penitentiary, to produce Gatlin in court. Hancock refused to produce the prisoner and asked of the Court of Appeals a writ of prohibition against Parker, the judge, on the grounds that "he (Hancock) believed in good faith that the court had no jurisdiction in the premises and because the Commissioners of the Sinking Fund refused to permit the prisoner taken out of the penitentiary for that purpose." The writ of prohibition was refused, and in holding that Hancock must produce the convict in the Fayette circuit court in obedience to the order of the judge thereof, the court, in the opinion, in part, said:

"It is contended, however, by counsel for the plaintiff that the order in this case ought not to have been made because there is no provision in law for paying the expenses incident to the production of this witness in the Fayette circuit court. If this were true, it would not affect the rights of the accused to have compulsory process to secure the attendance of the witness."

Although as previously said in the opinion:

"The material question, upon which authority to issue the writ applied for depends, is whether the defendant, as judge of the Fayette circuit court, had the jurisdiction or power to require the plaintiff, as warden of the penitentiary, to produce the prisoner in his court to testify."

The opinion proceeds to say:

"The Commonwealth has the custody and control of this witness, and the accused cannot reach him except by

compulsory process, to which he is entitled under the bill of rights. If there is no provision in the law for paying the expenses in such emergencies it should be made by the legislature and the want of it is by reason of no fault of the accused; but we hold that it is the duty of the court to ascertain and make allowance for the expenses of such removal and conveyance of this witness, such as are imposed by section 361 of the Kentucky Statutes, and that the same are payable out of the state treasury under the said section."

Section 361, referred to in the opinion, provides compensation to officers and guards for conveying prisoners to the penitentiary. With greater propriety, however, the court might have referred to section 2046, Kentucky Statutes, which provides compensation to an officer and guards for conveying a prisoner charged with felony from one county to another, or to the penitentiary; for the service required of the warden, Hancock, in the case, *supra,* was that of conveying the prisoner from the penitentiary at Frankfort to the Fayette circuit court at Lexington and, after he had testified, returning him to the penitentiary at Frankfort. If it be conceded that what was said by the court in the last paragraph of the opinion quoted, was necessary to be determined in the case, the witness, being a convict, could only be conveyed to Lexington and returned to Frankfort in the custody of the warden or a guard of the penitentiary, and as he was in the custody of the Commonwealth and it was the duty of its representative, the warden, to produce him in the Fayette circuit court, and return him to the penitentiary, the expense, in the absence of a statute making the defendant, Warfield, responsible for it, necessarily rested upon the Commonwealth. Hence, it was properly adjudged that the Commonwealth should pay it as provided by the section of the statute, *supra.* There was no question of witness fees or mileage of the witness involved, or as to any duty of the Auditor to pay such witness fees or mileage. For the reasons indicated, we fail to see the analogy between that case and the one before us.

Before giving our construction of the provisions of the bill of rights, section 11, constitution, in question, it will be advisable to inquire further into the duties of the Auditor with reference to the payment of claims

against the state. Section 229, constitution, declares that:

"No money shall be drawn from the state treasury, except in pursuance of appropriations made by law."

And, as we have already seen, section 143, Kentucky Statutes, requires that a warrant of the Auditor upon the treasury shall state upon its face, not only the date, amount, name of the person to whom payable, and on what account, but also state out of what fund it shall be paid; and, further, that the warrant shall not be issued unless the money to pay the same has been appropriated by law. Nor are the requirements named the only ones to be observed by the Auditor for, as also stated in the section, *supra,* he may take the precaution of requiring any claimant to state, on the face of his claim, the law under which it is payable.

Section 367, Kentucky Statutes, fixes the fees and mileage to be allowed witnesses for the Commonwealth in felony cases. Sections 1114-1123, Kentucky Statutes, applying alone to change of venue, indicate the steps to be taken for procuring the attendance of witnesses upon the trial, following the change of venue, and otherwise define the duties that devolve upon the court granting the change and not upon the court in which the case is to be later tried.

Manifestly, in none of the statutes considered, do we find any authority for the Commonwealth paying the costs of the defendant in a criminal prosecution, whether incurred by way of expense in procuring the attendance of his witnesses or otherwise. It may, as it has done, by statute, make provision for the payment of its own witnesses in felony cases, but cannot, in the absence of statutory authority or a constitutional provision to that effect, be compelled to pay the costs of the defendant. Indeed, this is made clear by section 885, Kentucky Statutes, which provides:

"If the Commonwealth shall be unsuccessful in any case prosecuted in her own right, no judgment for costs shall be rendered against her."

Section 884 provides:

"A poor person residing in this state may be allowed by a court to prosecute or defend an action therein without paying costs, whereupon he shall have any counsel that the court may assign him and from all officers all needed services and processes without any fees, ex-

cept such as may be included in the cost recovered from the opposite party.''

The exemption from costs allowed by this section to a poor person has been held to apply to a criminal prosecution against such person, and to the right of appeal from a judgment of conviction; but it will be observed that neither in this section nor elsewhere is it provided that the costs incurred by such poor person in the prosecution or defense of his case shall be paid by the Commonwealth.

Recurring to the construction of the Bill of Rights, section 11, constitution, insisted upon by appellee, we are constrained to hold that the words ''compulsory process'' therein used, do not mean that the witnesses for the defendant, when subpoenaed as in this case, shall be paid by the Commonwealth. In Powers v. Commonwealth, 114 Ky. 237, in discussing the meaning of the words ''compulsory process'' as used in section 11, Bill of Rights, we said:

''The 'compulsory process' means not only the ordinary subpoena, but a warrant of arrest or attachment for such witnesses as failed to obey, or avoided, service of the first subpoena, or recognizance.''

The constitution of Louisiana gives to the defendant the same right to ''compulsory process,'' that is found in our constitution, and the supreme court of that state in defining the meaning of that term, said:

''The process referred to is the right to demand subpoenas served. When he has been accorded those, he has received the benefit of the constitutional 'right to compulsory process.' ''

In Graham v. State, 50 Ark. 165, it was held:

''Compulsory process for obtaining witnesses, means the right to invoke the aid of the law to compel the personal attendance of witnesses at the trial, when they are within the jurisdiction of the court.''

In State v. Nathaniel, 52 La. 588, the question here involved seems to have been passed on. The court, after a review of numerous standard authorities, said:

''The question has arisen, elsewhere, as to whether the right to 'compulsory process' carries with it the right to have the witnesses brought in without expense to the defendant, and it has been settled in the negative. Mr. Rice says: 'The constitution of the United States and the constitutions or statutes of the several states,

secure to the accused the right to compulsory process for obtaining witnesses in his behalf. This provision has been construed to mean that the accused shall not be deprived of the right of issuing subpoenas for his witnesses, as in civil cases, and not to entitle him, on application, to a decree of the court for an allowance to secure their attendance.' A defendant's constitutional right to compulsory process does not require the state to pay their (the witnesses) fees."

Perhaps as good a definition of compulsory process as any of those mentioned, is to say that it is such coercive means as the courts, by virtue of their inherent powers or sanction of the law, are permitted to employ. To illustrate: If a witness fail to attend court in obedience to a recognizance or a subpoena, he may be compelled to do so by an attachment or warrant of arrest issued by order of the court, or required to give bond to attend the trial as a witness, or punished for contempt on account of his failure to do so. The right of a poor person, subjected to legal prosecution, to have the officers of the law serve process upon his witnesses and, by legal means, compel their attendance as witnesses in his behalf, without compensation from him, has never been questioned in this jurisdiction; and it is equally true that if the witnesses subpoenaed in his behalf fail to attend the trial they may, by coercive means, ordered and directed by the court in which his case is pending, be compelled to do so, without the payment to them of the per diem and mileage allowed by law.

If it should, in any case, be beyond the coercive powers of the court to procure for the defendant the presence and oral testimony of his witnesses, he is protected in his constitutional rights by reason of the provision of section 189 of the Criminal Code, which permits the filing, by him, of an affidavit for continuance, which, if it show due diligence upon his part and the materiality of the facts to which the absent witnesses would testify, permit such affidavit to be read as the deposition of the absent witnesses, and in Pace v. Commonwealth, 89 Ky. 204, we held that this section of the code does not violate the provision of the constitution which guarantees to the accused compulsory process for obtaining witnesses in his favor.

It is our conclusion that the expression "compulsory process," as used in Bill of Rights, section 11, constitu-

tion, does not confer upon the courts of the Commonwealth authority to require the Commonwealth to pay the expense of procuring the attendance and testimony of witnesses for the defendant in a criminal prosecution, and to hold otherwise would license persons charged with crime, under pretense of poverty, to summon hordes of witnesses at the expense of the Commonwealth, and entail upon it such enormous expense as to swell the costs of criminal prosecutions to an extent that would financially embarrass it beyond measure.

As the appellee does not rely upon the question of contemporaneous construction pleaded in his petition, it is unnecessary to refer to it further than to say that it can have no effect here in the face of the plain provisions of the constitution and statutes we have referred to as controlling the main question involved.

For the reasons indicated, the judgment of the lower court is reversed and the cause remanded with directions to that court to overrule the demurrer to the answer, sustain the demurrer to the petition, and dismiss the action. Whole court sitting.