BILLMAN et v BOARD OF EDUCATION OF RURAL SCHOOL DISTRICT ° JACKSON TWP, FRANKLIN CO et

Ohio Appeals, 2nd Dist, Franklin Co

No 2386. Decided June 29, 1934

L. C. Barker, Columbus, and John R. Horst, Columbus, for plaintiff.

Donald J. Hoskins, Prosecuting Attorney, Columbus, Robert O'Dell, Asst. Prosecuting Atty., Columbus, and Eugene Carlin, Asst. Prosecuting Atty., Columbus, for defendants.

## OPINION

By BARNES, J.

Sec 7595-1, GC, prescribed the procedure under which boards of education of school districts may apply to the Director of Education for participation in the state educational equalization fund for the ensuing year. The original enactment of this supplementary section was April 6, 1923 (Ohio Laws, Volume 110, page 315). The same was amended April 17, 1925 (Ohio Laws, Volume 111, page 481) and April 19, 1929 (Ohio Laws Volume 113, page 259).

Neither in the original enactment nor in the amendments above referred to, nor in any other kindred sections, were any provisions made for vote of the electors of the school district as a condition precedent for participation in the equalization fund.

The Eighty-ninth General Assembly enacted Senate Bill No. 337 "to authorize additional taxes to be levied outside of the limitation imposed by **Article 12, §2 .of the Constitution** by amending §§2293-18, 2293-19, 2293-21, 5625-2, 5625-7, 5625-14, 5625-15, 5625-16, 5625-17, 7595-1 and 7908 GC, and enacting supplementary sections §§5625-18a, **5625-18b, 5625-18c, 5625-18d** and **5625-18e, GC."**

This enactment will be found in Ohio Laws of 1931, Volume 114, pages 843 to 850, inclusive.

This enacted law was filed in the office of the Secretary of State, Columbus, Ohio, on the 16th day of July, A. D. 1931.

A first impression might lead to the conclusion that by reason of the fact that the act relates to taxation, it would come under the exception in **paragraph 1-c, Article 2 of the Constitution of 1912** exempting such acts from referendum provisions and becoming effective immediately. The case of **State v Forney, 108 Oh St, 463,** decided in 1923 holds to the contrary. This decision was by a divided court, the opinion being by Judge Wanamaker, and concurred in by Marshall, C. J., and Day and Allen, JJ.

Robinson and Mathias dissented, Judge Robinson writing a short dissenting opin-

ion. Judge Jones took no part in the consideration or determination of the case.

Any decision by the Supreme Court adopted by a mere majority is very likely to be further considered by a different personnel and may or may not remain a fixed precedent.

However, at this time the question is stare decisis, and we must say that this Senate Bill No. 337 was subject to referendum and the law did not become effective until on or about October 14, 1931.

Counsel in their respective briefs agree that the law was not in full force and effect until on or about October 14, 1931.

The following is the amendment to §7595-1, GC, as enacted by the Eighty-ninth General Assembly and becoming operative on or about October 14, 1931:

"Provided, however, that no such application shall be refused if the electors of such school district have voted affirmatively on the proposition required to be submitted to them by §§5625-18a to 5625-18c, GC, inclusive, and if the board of education in making the application has levied all taxes permitted by law and under such vote of the electors."

Secs 5625-18a to 5695-18c, GC, inclusive, were supplementary sections enacted originally under Senate Bill No. 337. Previous to this enactment they had no counterpart in any other legislative law.

Sec 5625-18a GC reads as follows:

Sec 5625-18a GC. If the board of education of any school district shall have applied to the director of education for participation in the state educational equalization fund under the provisions of §7595-1 GC for the school year 1931-1932, but cannot make tax levies sufficient to meet the requirements of such section, there shall be submitted to the vote of the electors of such district at the November election in the year 1931, the question whether the people of said district shall approve such application and authorize a tax for the current expenses of the school district outside of the fifteen mill limitation for so long a period as said district participates in said fund, the rate of such extra levy to be not greater than the average levy for the current expenses of schools, authorized by vote of the people in all districts throughout the state which do not participate in the state educational equalization fund, but in no event to exceed three mills. The board of elections of the county shall submit the question to the electors of the district in accordance with

the provisions of §5625-17 GC but the form of the ballot shall be as follows:

"Shall the ........ school district apply for participation in the state educational equalization fund, and levy a tax outside of the fifteen mill limitation for the current expenses of said school district in an amount equal to the average tax levy voted outside of said limitation for the current expenses of schools by all the school districts in the state of Ohio which do not participate in said fund (but in no event to exceed three mills) for such period as the district may continue to participate in said educational equalization fund."

Special attention is called to the following provision in §5625-18a GC:

"The board of elections of the county shall submit the question to the electors of the district in accordance with the provisions of §5625-17 GC but the form of ballot shall be as follows:"

Then follows the form of ballot prescribed.

Sec 5625-17 GC was originally enacted August 10, 1927, and while it appears as an amendment in Senate Bill No. 337, yet the amendment was nothing more than correcting some clerical errors. This section, as amended, reads as follows:

"Sec 5625-17 GC. A copy of any resolution adopted as provided in Section * * * §5625-15 GC shall be certified by the taxing authority to the board of deputy state supervisors and inspectors of election for the proper county or counties prior to September 15th in any year, and said board shall submit the proposal to the electors of the subdivision at the succeeding November election. Such board shall make the necessary arrangements for the submission of such question to the electors of such subdivision and the election shall be conducted, canvassed and certified in like manner as regular elections in such subdivision for the election of county officers. Notice of the election shall be published in a newspaper of general circulation in the subdivision once a week for four consecutive weeks prior thereto, setting out the purpose, the proposed increase in rate, and the number of years during which such increase 'shall be in effect and the time and place of holding the election.

The form of the ballots cast at such election shall be:

"An additional * * * tax for the benefit of (name of subdivision) ...... for the

purpose of (purpose stated in the resolution) ...... at a rate not exceeding ...... mills for ...... (life of indebtedness or number of years the levy is to run.")

For the Tax Levy
Against the Tax Levy

"The question covered by such resolution shall be submitted as a separate proposition but may be printed on the same ballot with any other proposition submitted at the same election other than the election of officers. More than one such question may be submitted at the same election."

Sec 5625-17, GC, as originally enacted, prescribes the procedure for submitting proposals for tax levy in excess of the fifteen mill limitation to the electorate of the subdivision as enumerated in these sections, could not be construed to include within its scope the question submitted to the electors as disclosed in the instant case. It is only by provisions of §5625-18a GC that the scope of §5625-17 GC is enlarged to include the situation provided for in said §5625-18a GC.

In the main the determination of the question involved in the instant case requires a careful study of §§7595-1, 5625-18a and 5625-17 GC as found in Ohio Laws, Volume 114, pages 846, 847 and 849.

Other sections of the act may have a slight bearing.

With these sections before us, and having in mind the date of their enactment and the further fact that a special tax was voted on the taxpayers of the subdivision in order to place the board of education in position to participate in the equalization fund, let us now look to the pleadings and the agreed statement of facts to enable us to ascertain if the requisite steps were taken to authorize the vote whereby the additional tax levy could be legally made.

We might make the observation at this time that counsel for the defendant admit that the legality of the tax levy is based upon the authorizaton through a majority vote of the electors of the subdivision, and not otherwise.

Starting at page 1 and ending with paragraph on page 2 of the agreed statement of facts, we find the following:

"That on or about the 29th day of August 1931 at a special meeting of the said Board of Education of said Rural School District of Jackson Township, Franklin County, Ohio, the said Board of Education duly passed a resolution, a true copy and correct copy of which is hereto attached, marked 'Exhibit A,' and made a part hereof, a copy of which resolution was certified to the Board of Elections in and for said Franklin County, Ohio."

This is claimed to be the compliance with the following provisions of §7595-1 GC:

"The board of education of any school district may at any time prior to July 31 of any year apply to the director of education for participation in the state educational equalization fund for the ensuing year. Such application shall be in such form as the director of education prescribes."

It has been decided by the Supreme Court, in the case of State ex v Ross, 109 Oh St, 461, that the provision of the Code that the application shall be made prior to July 31 is directory merely and that such application may be legally made at a subsequent date. The fact that the resolution was accepted by the director of education would render it sufficient in form.

It will be noted, however, that this resolution was adopted and presented prior to October 14, 1931, when Senate Bill No. 337 became a law. It also appears that the presentation of this resolution to the director of education for participation in the equalization fund would not be complied with for the reason that the subdivision could not make tax levies sufficient to meet the requirements of §7595-1 GC except the question be submitted to the vote of the electors as provided in §5625-18a, GC.

The agreed statement of facts recites that the board of elections in and for Franklin County did present to the electors of the subdivision at the general election held on the 3rd day of November, 1931, a form of ballot, an exact copy of which is attached and marked "Exhibit B." This was following the provisions contained in §5625-18a GC, reading as follows:

"The board of elections of the county shall submit the question to the electors of the district in accordance with the provisions of §5625-17 GC but the form of the ballot shall be as follows:"

Sec 5625-17, GC, among other things, contains the following provision:

"Notice of the election shall be published in a newspaper of general circulation in the subdivision once a week for four consecutive weeks prior thereto, setting out the purpose, etc."

464

The agreed statement of facts on the question of notice is as follows:

"But the only notice of such election on said proposed question presented in said ballot was by posting in or about the several voting precincts of said Jackson Township, Ohio, a form of notice, an exact copy of which is hereto attached and marked 'Exhibit C' and made a part hereof."

Exhibit C attached to the agreed statement of facts is dated September 22, 1931, and is signed as follows:

"By order of the Board of Elections of Franklin County, Ohio.
"John E. Crooks, Clerk."

While there is nothing direct in the agreed statement of facts, yet from Exhibit C it is fairly inferable that the notices of the election were posted on or about the date of September 22. However, Exhibit C is positive evidence of the action of the board of elections prior to October 14, 1931, the latter date being the time when the law authorizing the election went into effect.

There was no publication at all in any newspaper as required under the act. Counsel for defendant urge that it was not possible to publish in a newspaper for four weeks, for the reason that between October 14, when the law became effective, and November 3, the date of the election, there was only a period of three weeks.

It is urged that since it was a demonstrated impossibility to make the publication for four weeks, that thereby the board of elections could exercise discretion in prescribing the form of notice to be given. No citation of authority is presented in support of this claim.

In the Union County case decided by the Court of Appeals of the Third District, we find that Judge Guernsey, speaking for the court, in his opinion, arrives at the conclusion that the provision for notice provided in §5625-17 GC has no application for the school year 1931-1932.

We are unable to bring ourselves to this conclusion. It seems to us that the language in §5625-18a GC requiring the election to be submitted in accordance with the provisions of §5625-17 GC, is so clear and free from ambiguity as to prevent such construction as would deny the plain language. See State ex v Commissioners, 94 Oh St, 300-301; Swetland et v Miles, 101 Oh St, 501.

It was within the province of the legislature to prescribe a different time of publication in a newspaper, or a different manner of notice of the election, but for the court to do so seems to us to be judicial legislation. The fact that the legislature has created an anomalous situation through providng the technique for participating in the equalization fund during the school years of 1931 and 1932, and afterwards making the participation impossible in that the published notice required can not be made, can not authorize courts to correct the defects in the legislation. According to the agreed statement of facts every step taken prior to the election, preceded Senate Bill No. 337 becoming a law. The Legislature could, if it so desired, have declared the act an "emergency act" and thus have taken it without the provisions of the referendum.

The principle is unqualifiedly announced in this state that statutes imposing taxation are to be strictly construed.

Cincinnati v Connor, 55 Oh St, 82;

Haughton v Southard, Treasurer et, 43 Oh Ap, 25 (12 Abs 581);

Reed v Toledo, 18 O., 166.

Counsel for plaintiff also urge in support of their prayer for injunction, that the entire act, in so far as it seeks to allow taxation in excess of the fifteen mills, is unconstitutional. We have examined the authorities cited in support of this contention. We do not hold the act to be unconstitutional.

It is our conclusion that the injunction must be sustained. Entry may be drawn accordingly. Exceptions will be allowed.

HORNBECK, PJ, concurs.