[Filed October 28, 1889.]

## JOSEPH MORIN, Respondent, *v.* MULTNOMAH CO., Appellant.

A county, under the laws of this State, is a mere creature of the statute. Its officers have no inherent authority, and can only do those acts which the legislature has prescribed. This rule obtains in regard to every civil or political agency of the government deputed to exercise special and limited powers.

Where an information was filed against C. accusing him of the crime of mayhem for mutilating the person of M., at a certain county in the State, and the latter was a witness in the proceedings thereon before the examining magistrate, who required him to give an undertaking, with surety, in the sum of $500 for his appearance as a witness at the trial of C. upon any indictment which might be found against the latter by the grand jury for such county on account of the accusation; and M., being unacquainted in the community where he was stopping, and where the alleged offence was charged to have been committed, failed to give such undertaking, and was thereupon held by the magistrate to appear as such witness, and was detained during the interval between that time and the time of such trial,—a period of seventeen days.

*Held,* that M. had no right of action against such county for his loss of time; that there was no contract on the part of the county to pay therefor, either express or implied; that the county had no authority to enter into any such contract, for the reason that the legislature had not granted it power to do so.

Nor did the county neglect or violate any duty it owed M., that he was held as a witness by order of the examining magistrate under an authority vested in him by law, which the county had no right whatever to control.

*Held, further,* that if the compulsory services performed by M. in attending and giving testimony at the trial against C. was demanding his particular services. within the meaning of the clause in the constitution of the State which provides as follows: "Nor shall the particular services of any man be demanded without just compensation,"—it would not follow that M. could claim compensation therefor as against the county; that the duty of providing for the observance of said clause of the constitution does not devolve upon counties, but upon the legislature, and, if the latter fails in the performance thereof, it does not follow that the former will become liable therefor; nor have the courts any discretion to compel them to.

*Held, however,* that such services were not "particular services," within the meaning of the constitution, but that they belonged to that class of general services which every man is bound to render for the general as well as his own individual good.

The doctrine upon this point announced in *Daly* v. *Multnomah Co.,* 14 Or. 20, approved.

APPEAL from the circuit court for Multnomah county.

The respondent commenced an action against the county to recover pay for his services for the time during which he was held in order to compel his appearance as a witness in the case of *State* v. *Cody.* Issue having been joined in the action, the same was tried by the court, and the following facts and conclusions of law found: "(1) That on the nineteenth day of March, 1889, the plaintiff was an inhabitant of the county of Multnomah, and resided and had his place of employment within a half mile of the court house,

where the circuit court held its sessions in and for said county. (2) That on said nineteenth day of March, 1889, there was a preliminary examination held before the police judge of the city of Portland, Oregon, at a place within a half mile of the plaintiff's residence, at which examination one A. J. Cody was charged, by the plaintiff, with the crime of mayhem, and the plaintiff was then and there present as a witness, and upon said examination the said A. J. Cody was held to answer before the grand jury for said crime; and the said police judge then and there ordered that Joseph Morin, the plaintiff herein, be held as a witness in the sum of $500; and thereafter, on the second day of April, 1889, the police judge issued a commitment reciting and directing as follows: 'And he (said Morin) having failed to give such bail, is committed to the county jail of this county, to be held as such witness;' and thereupon, by a commitment in the usual form, commanded the sheriff of Multnomah county to receive said Morin into his custody, and detain him until lawfully discharged. (3) That, in pursuance of said proceedings and commitment, the said sheriff received and took into his custody, on the second day of April, 1889, the said Morin, and detained him in jail for the period of seventeen days. (4) That said Morin was also held in custody pursuant to the original order of March 19, holding him as a witness, and from the nineteenth of March, 1889, in the city jail, until said second day of April, 1889. (5) That said Morin was a servant and employé at the Holton hotel, in the city of Portland, at the time of the arrest of said Cody, and had recently come to the city of Portland, had few acquaintances, and was unable to give the bail required of him when held as a witness, and was in actual custody, in pursuance of the order of said police judge, a period of twenty-eight days, and upwards. (6) That the reasonable value of said Morin's time and services while so in custody was $56, and his board furnished for the same period was $12; leaving the net value of said Morin's time while in custody $44. (7) That the said A.

J. Cody was duly convicted of the crime of mayhem, on the trial of said charge in the circuit court, and judgment given against him by said court on said conviction, and the fees and charges of the plaintiff in the matter aforesaid were taxed up against said Cody as part of the costs of said prosecution, and the same was presented, along with the rest of the cost-bill in said cause, to the county court of Multnomah county for allowance and payment, and said bill and charge of plaintiff was, by said county court, rejected and disallowed." As conclusions of law, the court finds that the plaintiff is entitled to judgment and an order that defendant pay to plaintiff $44, and the costs and disbursements of this action.

*E. B. Watson,* for Appellant.

*Booth & McGinn,* for Respondent.

THAYER, C. J.—Upon what principle a county in this State can be made liable in a case like the one under consideration I am unable to discover. That a county is a mere creation of the statute, and has no authority whatever beyond that which is delegated to it by the legislature, certainly ought to be understood by laymen as well as lawyers. Both classes should understand that county officials have no inherent authority, and can only do those acts which the legislature has prescribed. This rule holds good with regard to every inferior officer or tribunal, as well as to every civil or political agency of the government deputed to exercise special and limited powers. In this case there was no contract between the county and the respondent for the payment of money by the former to the latter on account of the matters alleged in the complaint, either express or implied. The county had no authority to enter into any such contract, for the simple reason that the legislature has not granted it the power to do so. Perhaps it would be well if county courts were authorized to reïmburse witnesses for their loss of time when detained under such circumstances; but that is a matter for the consideration of the legislature, and not for the courts. The latter cannot

make law, whatever emergency may arise, or however justly it might operate in the particular case.   The people, wisely or unwisely, have intrusted that power to another department of the government.   Nor did the county neglect or violate any duty it owed to the respondent.   He was held as a witness by order of the police judge, exercising the powers of an examining magistrate, which was the exercise of an authority vested in the magistrate by law, and which the county had no right whatever to control.   If the magistrate acted improperly in the affair, he alone was responsible for it, and no neglect or wrong on account thereof is chargeable upon the county.   The respondent is supposed to have been held and detained as a witness to answer the ends of justice, in obedience to a positive statute, and the county authorities had no discretion in the matter.   But, say the respondent's counsel, the constitution of the State provides that the particular services of any man cannot be demanded without just compensation.   Conceding that the detention of the respondent for the purpose of giving testimony against the party who he claimed had unlawfully mutilated his person was a demand of particular services within the meaning of the constitutional provision referred to, still, how can he claim compensation therefor as against the county of Multnomah ?   The duty of providing for the observance of such provision does not devolve upon counties.   They are not the proper institutions to provide for such compensation.   The duty belongs to the legislature; and, if it has failed in the performance thereof, it does not follow that a county must pay for such services.   The respondent might properly have refused to remain and testify as a witness in such case upon the ground that no compensation was provided for the payment of his services; and if the police judge had, notwithstanding, committed him to prison, it would have been an unlawful imprisonment, and he could have been released upon *habeas corpus*, and had his remedy for false imprisonment.   This, it seems to me, is the only remedy the respondent could invoke, if the view contended for by his counsel were correct; unless

we include as a remedy the right to petition the legislature for a relief bill.

But are the services claimed by the respondent "the particular services" which the constitution says shall not be demanded without just compensation? In *Daly* v. *Multnomah Co.*, 14 Or. 20, we held that the services of witnesses called to testify in criminal cases, where the witness resided within two miles of the place of trial, or the place where they were required to appear and testify, were not particular services, but were of the class of general services which every man was bound to render for the general as well as his own individual good; and therefore that the law of 1885, which refuses compensation in such cases, was not in violation of said provision of the constitution. Counsel for the respondent urge, however, that there is a distinction between that class of cases and the one in question; but I fail to perceive any in principle. Said counsel have also referred us to the Eleanor Higginson case, 1 Cranch, C. C. 73. In that case the party was ordered to enter into are cognizance. with surety, in a small sum, to appear and testify as a witness against a defendant charged with felony; but being a stranger, and unable to get surety, was committed to prison, and detained until the trial. The attorney for the United States moved the court that she should be allowed payment for her attendance during the whole time she was so detained. The Act of congress only provided for the payment of the prison fees, and made no allowance for the time of the witness. The court allowed the witness to prove her attendance, and ordered her to be paid for the whole time she was detained; it being her misfortune, and not her fault, that she could not obtain security for her appearance. This obviously was a very generous act upon the part of the attorney and the court, but affords no precedent in support of the respondent's right of action. The jurisdiction of the courts of this State cannot be extended to acts of charity or generosity, however strong the kindly impulses of the members thereof may incline them in that direction; but it must be confined

strictly to the adjudication of matters in accordance with the rules of statutory and common law.

The judgment appealed from must be reversed, and the case remanded to the circuit court, with directions to dismiss the complaint.