Argued September 22, affirmed November 18, petition
for rehearing denied December 16, 1953

# STATE OF OREGON *v.* BLOUNT, Sᴿ.

264 P. 2d 419

*Charles O. Porter,* of Eugene, argued the cause and filed a brief for appellant.

*C. E. Luckey,* District Attorney for Lane County, of Eugene, argued the cause for respondent. With him on the brief was W. Keith Rodman, Deputy District Attorney for Lane County, of Eugene.

LUSK, J.

Defendant was convicted of the crime of rape committed upon his minor daughter, and has appealed.

He assigns error (1) to the court's denial of his motion for postponement of the trial, and (2) to the

court's refusal to order the state to advance funds for the payment of witness fees and travel expenses of two persons who, it is claimed, would have been material witnesses for the defendant. A third assignment of error was abandoned on the argument. We will consider Assignments of Error Nos. (1) and (2) in inverse order.

On a date not disclosed by the bill of exceptions Charles O. Porter, attorney for defendant, filed a motion for the issuance of two certificates in furtherance of the serving of summons on Tom Nicholson, principal of Moreno School, Moreno, California, and Mrs. Marvella Blount, with her son, Eugene Victor Blount, Jr. The motion recited that it was based on § 26-1816, OCLA (a part of the Uniform Act to Secure the Attendance of Witnesses from Without a State in Criminal Proceedings), and on the affidavit of Mr. Porter dated March 16, 1953. The affidavit showed that Nicholson was recently the teacher of Diane Blount, the prosecutrix in the case at bar, and "as such he can testify authoritatively and impartially as to her reputation in the community for truth and veracity. His presence would be needed but for one day and arrangements could be made for him to drive up with other witnesses." The affidavit further showed:

"Marvella Blount was, until recently the wife of the defendant. Her son Eugene Victor Blount, Jr., according to testimony by the prosecutrix in the preliminary hearing, witnessed the alleged criminal act. Furthermore, the boy can testify as to his older sister's jealousy and her expressed wish to have the defendant sleep with her just as he did with Eugene, Jr., and Eugene's two year old sister. The presence of the little boy would only be needed for one day and transportation to Eugene, Oregon, could be arranged for him and his mother with

Joseph Blount 4174 Highland Place, Riverside, California.''

On March 16, 1953, the Hon. G. F. Skipworth, circuit judge, issued two certificates, as authorized by § 28-1816, OCLA. By one certificate he recited that the presence of Tom Nicholson, principal of Moreno School, Moreno, California, is required for one day, and that said Tom Nicholson is a material witness for the defendant, and that his transportation and expenses will be taken care of by the defendant and his friends. By the other certificate the judge recited that

''Eugene Victor Blount, Jr., four or five years old, is a material witness in the above matter * * *. His presence is required for one day, namely March 23rd, 1953. The Court is informed that said boy is now living with his mother, Marvella Blount, until recently the wife of the accused, at 511 Mission Boulevard, Riverside, California, and that she may still be working at Sheets Restaurant, 3847 Main Street, Riverside, California.

''Joseph Blount, 4174 Highland Place, Riverside, California, is a brother of the defendant, and it has been indicated that he may be able to bring the boy and his mother to the trial in the above matter, and that the defendant will be responsible for unreimbursed expenses of such a trip.''

The witnesses did not come, and, at the commencement of the trial on March 23, 1953, seven days after the issuance of the certificates, counsel for defendant moved for a continuance because of the absence of these witnesses. The motion was denied. Later in the trial, while the defendant was on the witness stand, counsel for defendant offered to prove that ''We have made every attempt to get Gene Blount, Jr., and that we could not get him because we did not have the $200 necessary to bring him up here by order of the court, Riverside County.'' The offer of proof was denied,

but the defendant was permitted to testify that the proposed witness, Tom Nicholson, was not at the trial because he, the defendant, was unable to raise the money for his transportation, and that Judge Waite, of the Superior Court for Riverside County, California, had ordered that the money be advanced.

## On the Merits

██ The Uniform Act above referred to was enacted in 1937 and appears as §§ 26-1815 to 26-1820, both inclusive, OCLA. The Act has not heretofore been before this court for construction. It has its counterpart in 40 of our sister states (including California) and in Puerto Rico. See 9 ULA '52 P.P., p. 12. It was adopted for the purpose of enabling the courts of this state, through the voluntary cooperation of the courts of another state having the same legislation, to secure the attendance of witnesses from such other state to give testimony in a criminal prosecution or grand jury investigation in Oregon.

Section 26-1816, OCLA, provides:

"If a judge of a court of record in any state which by its laws has made provision for commanding persons within that state to attend and testify in this state certifies under the seal of such court that there is a criminal prosecution pending in such court, or that a grand jury investigation has commenced or is about to commence, that a person being within this state is a material witness in such prosecution, or grand jury investigation, and that his presence will be required for a specified number of days, upon presentation of such certificate to any judge of a court of record in the county in which such person is, such judge shall fix a time and place for a hearing, and shall make an order directing the witness to appear at a time and place certain for the hearing.

"If at a hearing the judge determines that the witness is material and necessary, that it will not cause undue hardship to the witness to be compelled to attend and testify in the prosecution or a grand jury investigation in the other state, and that the laws of the state in which the prosecution is pending, or grand jury investigation has commenced or is about to commence (and of any other state through which the witness may be required to pass by ordinary course of travel), will give to him protection from arrest and the service of civil and criminal process, he shall issue a summons, with a copy of the certificate attached, directing the witness to attend and testify in the court where the prosecution is pending, or where a grand jury investigation has commenced or is about to commence at a time and place specified in the summons. In any such hearing the certificate shall be prima facie evidence of all the facts stated therein.

"If said certificate recommends that the witness be taken into immediate custody and delivered to an officer of the requesting state to assure his attendance in the requesting state, such judge may, in lieu of notification of the hearing, direct that such witness be forthwith brought before him for said hearing; and the judge at the hearing being satisfied of the desirability of such custody and delivery, for which determination the certificate shall be prima facie proof of such desirability may, in lieu of issuing subpoena or summons, order that said witness be forthwith taken into custody and delivered to an officer of the requesting state only after the tender of payment of the mileage and per diem herein provided for.

"If the witness, who is summoned as above provided, after being paid or tendered by some properly authorized person the sum of 10 cents a mile for each mile by the ordinary traveled route to and from the court where the prosecution is pending and five dollars for each day, that he is required to travel and attend as a witness, fails without good

cause to attend and testify as directed in the summons, he shall be punished in the manner provided for the punishment of any witness who disobeys a summons issued from a court of record in this state."

Section 26-1817, OCLA, provides:

"If a person in any state, which by its laws has made provision for commanding persons within its borders to attend and testify in criminal prosecutions, or grand jury investigations commenced or about to commence, in this state, is a material witness in a prosecution pending in a court of record in this state, or in a grand jury investigation which has commenced or is about to commence, a judge of such court may issue a certificate under the seal of the county stating these facts and specifying the number of days the witness will be required. Said certificate may include a recommendation that the witness be taken into immediate custody and delivered to an officer of this state to assure his attendance in this state. This certificate shall be presented to a judge of a court of record in the county in which the witness is found.

"If the witness is summoned to attend and testify in this state he shall be tendered the sum of 10 cents a mile for each mile by the ordinary traveled route to and from the court where the prosecution is pending, and five dollars for each day that he is required to travel and attend as a witness. A witness who has appeared in accordance with the provisions of the summons shall not be required to remain within this state a longer period of time than the period mentioned in the certificate, unless otherwise ordered by the court. If such witness, after coming into this state, fails without good cause to attend and testify as directed in the summons, he shall be punished in the manner provided for the punishment of any witness who disobeys a subpoena issued from a court of record in this state."

The defendant contends, as we understand his position, that the Uniform Act, together with § 26-1816, OCLA, authorizes the court to make the allowance in question, and that the court's refusal in this case to order it deprived him of his constitutional right to compulsory process (Art I, § 11, Oregon Constitution), and to due process of law and the equal protection of the laws as guaranteed in the Federal Constitution.

Section 26-1814, OCLA, which was enacted in 1915, reads:

"Whenever any person shall attend any court, grand jury, or committing magistrate, as a witness in behalf of the people of this state, or on behalf of any person accused of any crime, upon request of the district attorney, or upon subpoena, or by virtue of a recognizance for that purpose, and it shall appear that such person has come from any other state or territory of the United States, or from any foreign country, or that such person is poor, the court may, by an order to be entered in its minutes, direct the county treasurer of the county in which the court or grand jury may be sitting, to pay such witness such sum of money as shall, to said court, seem reasonable for his expenses and witness fees, and said order, so entered, shall be sufficient authority for the issuance and payment of any county warrant therefor."

This section may be put out of view for it applies only to persons who have already attended upon the court or grand jury as witnesses, and even as to them the making of an order for the payment of their expenses and witness fees is discretionary with the court. The contention here is that the defendant has the right to an order of the court for an advance of the necessary moneys so that they can be tendered to a witness in another state in accordance with the requirement of the Uniform Act.

The Uniform Act contains no provision authorizing the court to make such an order. It is silent as to the source of the money which must be paid or tendered to a witness, and nowhere in the Act is there any language conferring upon the court authority to make an order for the payment of the fees and mileage by the state. We cannot read into the statute such a provision without indulging in judicial legislation.

This was the conclusion reached in *State v. Fouquette*, 67 Nev 505, 221 P2d 404 (1950), cert. den. 341 US 932, 95 L ed 1361, 71 S Ct 799, 342 US 928, 96 L ed 691, 72 S Ct 369, the only case, so far as we are advised, in which the question has arisen. In a carefully considered opinion the court said:

> "Although no case directly in point has been found, it is clear that this statute, providing, as it does, that specified sums for fees and mileage shall be paid or tendered to non-resident witnesses summoned to attend and testify in criminal prosecutions in this state, but not providing, either expressly or by implication, that such witnesses summoned on behalf of the defendant shall be brought in without expense to him, does not confer upon the courts of this state authority to procure the attendance and testimony of witnesses from without the state for the defendant in any case at the expense of the public."

The suggestion is made that because the legislature has authorized payment by the state of fees and mileage of material witnesses for a defendant *within the state,* a public policy has been established which enables us to read into the Uniform Act a similar provision. The reference is to §§ 26-1805 and 26-1806, OCLA, where it is provided in substance that the defendant in a criminal action may have subpoenas issued "for not to exceed five witnesses, within the state, at the

expense of the state'' and that the court may make an order allowing subpoenas to issue for a greater number of witnesses upon a showing by affidavit that their testimony is necessary and material. There are similar provisions with respect to witnesses for the state.

In our opinion this legislation—if it can be said to have any bearing on the question at all—gives added emphasis to our view of the meaning of the Uniform Act; for the omission from that Act of any provision for subpoenaing out-of-state witnesses at the expense of the state, by contrast with express provisions of that kind in the statutes that deal with witnesses within the state, creates a strong inference, if any were needed, that the legislature did not intend to bestow any such gratuity in the case of the Uniform Act.

■ As to the argument, based upon an asserted public policy, we call attention to what is said by a recognized authority on statutory construction:

"What is called the 'policy' of the government, with reference to any particular legislation, is said to be too unstable a foundation for the construction of a statute. The clear language of a statute can be neither restrained nor extended by any consideration of supposed wisdom or policy. So long as a legislative enactment violates no constitutional provision or principle, it must be deemed its own sufficient and conclusive evidence of the justice, propriety and policy of its passage.'' Endlich, Interpretation of Statutes, 8, § 5.

■■ The policy of the state is determined by the legislature, not by this court, and the truth is that, up to 1937, when the Uniform Act was adopted, Oregon had no policy concerning witnesses subpoenaed in another state, for it had no legislation upon the subject. When the Uniform Act was passed the state was free to

adopt any policy that it might choose, within constitutional limits, with reference to the subpoenaing of witnesses brought in from other states having a similar statute. It did not choose to provide that such witnesses, whether for the state or for the defendant, should be compelled to come without advancing witness fees and expense of transportation. It did not choose to provide that such advances should be made to witnesses for the defendant, or for the state for that matter, at the expense of the state. The Uniform Act is complete within itself, and by its own terms establishes the policy of the state with respect to its subject matter.

■ We are also told that the Circuit Court can take upon itself the authority to order the state, or perhaps the county, to pay the expenses of out-of-state witnesses under the provisions of § 13-715, OCLA, which reads:

"When jurisdiction is, by the organic law of this state, or by this Code or any other statute, conferred on a court or judicial officer, all the means to carry it into effect are also given; and in the exercise of the jurisdiction, if the course of proceeding be not specifically pointed out by this Code, any suitable process or mode of proceeding may be adopted which may appear most conformable to the spirit of this Code."

This is a purely procedural provision authorizing the courts of this state to adopt a "suitable process or mode of proceeding * * * which may appear most conformable to the spirit of this Code", in order to enable the courts to exercise a power conferred where the mode of doing so has not been otherwise indicated by statute. The provision is a part of the Code of Civil Procedure adopted in 1862 as a complete act. See General Laws 1862, p 223, § 911; Deady, General

Laws of Oregon, p 105, note. It has no application in criminal actions, although it was invoked by the court in *State v. Chase,* 106 Or 263, 269, 211 P 920, which was a prosecution for rape. We are not prepared to say that, in the absence of such a statute, a court is not invested with inherent power to provide appropriate modes of procedure for making effective jurisdiction conferred upon it by the legislature. But that power is irrelevant to the contention made here. If the Circuit Court should order the state or the county to pay the expenses of a witness subpoenaed in another state when the legislature has not authorized it to do so it would not be devising a mode of proceeding for carrying out jurisdiction conferred by the legislature, but it would be exercising an unauthorized jurisdiction. The proper interpretation of § 13-715, OCLA, was clearly expressed by Mr. Justice Harris speaking for the court in *Murphy v. Bjelik,* 87 Or 329, 361, 169 P 520, 170 P 723, where it is said:

"* * * This section only applies where jurisdiction is conferred on a court or judicial officer. The section cannot itself be the source of jurisdiction, for it is only available to carry jurisdiction into effect after jurisdiction has first been conferred by the Constitution or some statute."

There is nothing in the two cases cited in support of the defendant's position (*Kelley v. Kelley,* 183 Or 169, 191 P2d 656; *Aiken v. Aiken,* 12 Or 203, 6 P 682) which is inconsistent with this view.

We take up the defendant's claim that his constitutional rights have been invaded. Article I, § 11 of the Oregon Constitution, provides in part: "In all criminal prosecutions, the accused shall have the right * * * to have compulsory process for obtaining witnesses in his favor."

It should be observed at the outset that decisions such as *State v. Grimes,* 7 Wash 445, 35 P 361, cited in support of the defendant's position, have no application to this case because the Constitution of Washington expressly provides as a part of the guaranty of compulsory process that "In no instance, shall any accused person before final judgment be compelled to advance money or fees to secure the rights herein guaranteed." Art. I, § 22; Amendment 10, Washington State Constitution. There is no similar provision in the Constitution of Oregon.

■ The reason for the inclusion of the guaranty of compulsory process in the Bills of Rights of the Constitution of the United States and of the several states is well known. It was to guard against "some particular wrong, which had been avowed or practiced by the government from which we had separated". *State v. Waters,* 39 Me 54. The particular wrong in this instance was that in felony cases the accused could not command, as matter or right, compulsory process for his witnesses. *State v. Fouquette,* supra. But, as the court said in *State v. Waters,* supra, the rights of defendants "to have their witnesses paid by the government was never claimed in England or this country before the formation of our constitution. It was not one of the evils designed to be guarded against, nor a right to be asserted by constitutional provision." The authorities quite uniformly say that in the absence of a statute the accused in a criminal case is not entitled to have his witnesses summoned at public expense as a part of the constitutional right to compulsory process. *Casebeer v. Hudspeth,* 121 F2d 914 (CCA 10th, 1941); *State v. Waters,* supra; *State v. Fouquette,* supra; *Whittle v. Saluda County,* 59 S C 554, 38 SE 168; *Roberts v. State,* 94 Ga 66, 21 SE

132; *Greene v. Ballard,* 174 Ky 808, 192 SW 841; *United States v. Fore,* 38 F Supp 142; *Bennett v. Kroth,* 37 Kan 235, 15 P 221, 1 Am St Rep 248.

 The defendant has certainly not been injured nor deprived of any constitutional right by a statute which enables him, through the voluntary cooperation of California, to compel the attendance of a witness from that state at the defendant's expense. Without the statute he could not compel the witness to come at all. Neither the requirements of compulsory process nor of the Fourteenth Amendment (*Minder v. Georgia,* 183 US 559, 46 L ed 328, 22 S Ct 224) demand that the state enact such legislation. Even though the state should do so it would be ineffectual without the voluntary cooperation, through a reciprocal act and its enforcement, of the state where the witness sought to be subpoenaed is found. The Uniform Act does not extend the jurisdiction of the courts of this state beyond its territorial limits, for this is not within the power of the legislature. The operation of the Uniform Act depends upon the principles of comity, and it has no efficacy except through the adoption of the same act by another state. California could repeal its act tomorrow and no constitutional right of any defendant in a criminal action would be touched.

Obviously, if the Uniform Act were to be declared unconstitutional because it does not provide for the subpoenaing of witnesses for the defendant at the expense of the state, the case of the defendant here would not be made any better, because in that event there would be no law at all under which he could have compelled the attendance of the California witnesses. We do not understand that the defendant seeks a ruling of that kind, but rather that he would have this

court hold that in the application of the Uniform Act to his case he has been discriminated against and deprived of the equal protection of the laws and of due process of law because he is a poor man and unable to pay the cost of bringing the witnesses here. It would perhaps be sufficient answer to this contention to say that the defendant has not in fact been the victim of any discrimination nor deprived of any right accorded to the state because the state has brought no witness from California, and has received no advantage from the Uniform Act denied to the defendant.

But even though we should assume that in the case of an indigent defendant there exists a right which the Uniform Act does not grant and a power in the court which it does not confer, the exercise of that power would necessarily be conditioned upon the defendant's invoking it and producing evidence in the form of affidavit or otherwise from which the court could find the fact of poverty. There is nothing of the kind here. As the motion for the certificates, the affidavit in support thereof, and the certificates issued by the judge, disclose, the defendant, so far from asking the court to order the state to pay the expenses of the California witnesses, and so far from producing proof of his own inability to do so, represented to the court that he himself would be responsible for those expenses.

It is urged that upon the trial the defendant did prove his poverty by his sworn testimony in support of his motion for a continuance. That may be conceded, but it must be manifest that we cannot say that the circuit judge erred because he did not make an order which he was not asked to make on the basis of evidence which was not before him at the time he made the very order which the defendant sought.

There are additional reasons for holding that the assignment of error we have been discussing is devoid of merit. These it will be more convenient to discuss in connection with the court's denial of the motion for a continuance. This motion, of course, was addressed to the sound discretion of the court. It was based on the absence of the two California witnesses, and the court might well have concluded that the defendant was playing fast and loose with it by representing at first, before the trial, that he would bring the witnesses to Oregon at his own expense, and later, upon the trial, attempting to secure a postponement because he had not brought them.

■ No affidavit in support of the motion was filed as required by § 26-905, OCLA. As a matter of strict practice, therefore, this assignment is not regularly before us. *State v. Finch,* 54 Or 482, 487, 103 P 505. The defendant contends, however, that the affidavit in support of the certificate for securing the attendance of the California witnesses should have been considered by the court as filed in support of the motion for a continuance. Assuming this to be permissible, the question of the sufficiency of the affidavit remains to be determined.

■ The requirements for such an affidavit are thus stated in 17 CJS 262, Continuances § 94:

"'The affidavit for a continuance asked for on the ground of absent evidence should set forth the substance of the testimony or evidence expected to be obtained, where this is possible, so that the adverse party may have an opportunity to admit that such evidence would be given and thus avoid the necessity for a continuance. The statement of facts should be clear, definite, and direct, and mere conclusions as to what the absent witnesses would testify are insufficient. * * *

"The affidavit must state the ground on which affiant bases his expectation that the absent witnesses, if present, would testify as stated therein."

To the last sentence is cited *Taylor v. Nelson,* 139 Or 155, 5 P2d 707, 8 P2d 1089. That case and *North American Securities Co. v. Cole,* 61 Or 1, 118 P 1032, and *Cole v. Willow River Company,* 60 Or 594, 117 P 659, 118 P 176, 1030, support the text. The general rules found in CJS are also stated in 12 Am Jur 474, 475, Continuances §§ 34, 35.

■ The affidavit of Mr. Porter falls far short of these requirements. It does not state that either Tom Nicholson or Eugene Victor Blount, Jr., would, if called as witnesses, testify to anything, and it is not even possible to determine from the affidavit that their testimony would be favorable to the defendant. The instrument consists entirely of conclusions, and leaves one in the dark as to whether any testimony that either of these proposed witnesses might give would be material. It does not disclose any ground of the affiant's belief that either of them would give material testimony. A showing of that kind would be particularly important as to Eugene Victor Blount, Jr., who was a four-year-old boy at the time of the trial. Under our statute children under ten years of age "who appear incapable of receiving just impressions of the facts respecting which they are examined, or of relating them truly" are not competent witnesses. § 3-103, Subd. 2, OCLA. No trial should be postponed for the purpose of procuring the testimony of so young a child in the absence of an affidavit by a person with knowledge of the facts concerning the child's intelligence, understanding, and recollection. The affidavit should state facts such as would justify the court in finding

prima facie that the child is a competent witness. There is nothing of this kind in Mr. Porter's affidavit. It does not even disclose the age of the child.

■ These considerations apply with equal force to an affidavit in support of an application to secure the attendance of witnesses under the Uniform Act. Before issuing such a certificate the court must find that the person sought to be subpoenaed is a "material witness". § 26-1817, OCLA. It is uniformly held that statutes which require a proper and timely showing of materiality of the testimony of witnesses subpoenaed at public expense are reasonable and harmonious to the terms of the constitutional guaranty of compulsory process, and that without compliance with such provisions the defendant cannot demand as a matter of right that the witnesses be subpoenaed. 70 CJ 37, Witnesses § 8; *Palmer v. State,* 165 Ala 129, 51 So 358; *Pittman v. State,* 51 Fla 94, 41 So 385, 8 LRA (ns) 509; *State v. Pope,* 78 S C 264, 58 SE 815; *State v. Fouquette,* supra; *State v. Godard,* 4 Ida 750, 44 P 643.

■ The requisite finding of materiality can only be made on the basis of an affidavit or other competent evidence setting forth the facts to which the proposed witness would testify. Cf. *Application of Stamler,* 111 NYS2d 313, 279 App Div 908. The materiality of the evidence must appear from those facts. The showing should be no less definite and direct than in the case of a motion for a continuance. For the reasons already stated the affidavit of Mr. Porter does not measure up to these requirements and is insufficient as a basis for the statutory finding. Even assuming, therefore, that the court had the asserted power to order the state to pay the fees and mileage of the California witnesses, it would not have been warranted in making

such an order in this case. It was not warranted indeed in issuing the certificates at all, for on any construction of the statute the affidavit was insufficient.

We hold that under the Uniform Act no power is conferred upon the court to order the payment by the state of the fees and mileage of witnesses subpoenaed on behalf of the defendant in a criminal action, that in this case no constitutional right of the defendant was invaded, that the showing made in support of the application for certificates to secure the attendance of witnesses in California on behalf of the defendant was insufficient, and that no error was committed in denying the defendant's motion for a continuance.

For these reasons the judgment is affirmed.

LATOURETTE, C. J., specially concurring.

I am in accord with the result reached in the majority opinion but disagree with the pronouncement that the trial court has no authority to make an order for the advance of witness fees and mileage for out-of-state witnesses in a criminal case. The court's position in this respect is set forth in the following language:

"The Uniform Act contains no provision authorizing the court to make such an order. It is silent as to the source of the money which must be paid or tendered to a witness, and nowhere in the Act is there any language conferring upon the court authority to make an order for the payment of the fees and mileage by the state. We cannot read into the statute such a provision without indulging in judicial legislation.

"* * * * *

"* * * It [the Uniform Act] did not choose to provide that such witnesses, whether for the state or for the defendant, should be compelled to

come without advancing witness fees and expense of transportation. It did not choose to provide that such advances should be made to witnesses for the defendant, or for the state for that matter, at the expense of the state. The Uniform Act is complete within itself, and by its own terms establishes the policy of the state with respect to its subject matter."

I am of the opinion that the trial court has implied authority to make such an order, and especially in view of § 13-715, OCLA, which is as follows:

"When jurisdiction is, by the organic law of this state, or by this Code or any other statute, conferred on a court or judicial officer, all the means to carry it into effect are also given; and in the exercise of the jurisdiction, if the course of proceeding be not specifically pointed out by this Code, any suitable process or mode of proceeding may be adopted which may appear most conformable to the spirit of this Code."

The above section was considered in the early case of *Aiken v. Aiken,* 12 Or 203, 208, 6 P 682, where it is said:

"* * * There need, therefore, be no failure of justice, under the jurisprudence of this state, in consequence of the mode of proceeding pointed out being inadequate to afford a remedy in a particular case, as any remedy in such case may be adopted, subject to the qualification mentioned. It is beyond the scope of legislative wisdom to prescribe a specific remedy for every class of cases that may arise in the complication of human affairs, and it was not attempted; but ample provision was made to prevent a party from being left remediless in case of an infringement upon his legal rights, and the courts must of necessity recognize the provision and carry it out when a proper case is presented."

This section was again construed in *Kelley v. Kelley*, 183 Or 169, 180, 191 P2d 656, speaking through Mr. Justice ROSSMAN, as follows:

"When the legislature creates a new right and renders available a remedy for the infraction of the right, or when legislation creates an additional remedy for the transgression of an existing right, § 13-715, just quoted, invests the court to which jurisdiction is given over the subject of the new legislation with all judicial power essential to carry into effect the legislative purpose in adopting the new act. * * *"

This statute, adopted in 1862, is simply a legislative declaration of an ancient elementary rule of law that every grant of express power carries with it the incidental or implied power necessary to make the exercise of the express power effective. It is claimed in the majority opinion that this statute is a part of the Civil Code and has no application in criminal proceedings. In answer to this, we have heretofore expressly applied this statute in a criminal case involving a charge of rape. *State v. Chase,* 106 Or 263, 269, 211 P 920.

It is true, as stated in the majority opinion, that the above enactment was adopted as a part of the Civil Code. However, it clearly appears on its face that its application was not confined to that code. From the language, "When jurisdiction is, by the organic law of this state, or by this Code or any other statute, conferred on a court or judicial officer," it clearly appears that the enactment embraces not only the provisions of the Civil Code but also the organic (constitution) law which no one would argue was part of the Civil Code and "any other statute" which obviously would be exclusive of the Civil Code and would of necessity in-

clude all criminal statutes. This is manifestly what Justice McBRIDE had in mind when he wrote the opinion in *State v. Chase,* supra.

The Uniform Act provides, among other things, that when a judge of a court of record in this state certifies that there is a criminal prosecution pending in his court and that a person, being within another state which has a Uniform Act relating to witnesses, is a material witness in such prosecution and that his presence will be required for a specific number of days, upon presentation of such certificate to a judge of a court of record in the county in which such person is, such judge in the other jurisdiction shall fix a time and place for hearing and shall make an order directing such witness to appear before him. If such outside judge determines that the witness is material and necessary and will not cause him any undue hardship to be compelled to testify in the prosecution, he shall direct the witness to attend and testify in the court where the prosecution is pending. The law further provides:

> "If the witness is summoned to attend and testify in this state he shall be tendered the sum of 10 cents a mile for each mile by the ordinary traveled route to and from the court where the prosecution is pending, and five dollars for each day that he is required to travel and attend as a witness. * * *"

And if he fails to so appear he shall be punished for contempt.

It is obvious that if such witness' expenses be not tendered, the witness is under no obligation to respond, and this applies not only to the state's witnesses, but to defendant's as well.

There was no need for a Uniform Act to enable the state or the defense to have the benefit of the presence of the willing witness. Such witness could always, and may yet, receive his expenses and per diem after his attendance at the trial. § 26-1814, OCLA. It was to the unwilling witness that the act was directed. If there is no power vested in the court to order the payment of the witnesses' expenses in advance in order to force the attendance of an unwilling witness—then in the name of reason, what good is the act?

Under § 87-966, OCLA, the county in which the prosecution is had is obligated to pay fees and mileage to the person rendering services as a witness in a criminal action.

It may be seen from the foregoing that not only does the law provide a schedule of tendered fees and expenses for out-of-state witnesses and a fund from which such fees and expenses shall be paid but also it empowers the court to make such an order as is necessary in the exercise of its jurisdiction to carry into effect the legislative purpose.

The majority opinion quotes from the "carefully considered" opinion in *State v. Fouquette,* 67 Nev 505, 221 P2d 404, being the only case in which the question before us was considered. A careful reading of that opinion discloses that the only question presented was a constitutional one. The court said:

"The 'Uniform Act to Secure the Attendance of Witnesses from Without the State in Criminal Cases,' * * * is not cited by appellant." 221 P2d 404, 410.

The court in that case then went on briefly to state that since the Uniform Act did not provide expressly or by implication for the payment by the state of

out-of-state witness expenses, such authority did not reside in the court. Following that statement, it appears that the trial court did permit the defendant to bring in four witnesses from California at the expense of the county but that it denied defendant's motion to bring in two additional witnesses at public expense only because the testimony of both, as shown by their affidavits upon which the motion was based, was incompetent and immaterial.

It appears to me that the legislature, in enacting the Uniform Act, clearly intended that the state should advance the out-of-state witness expenses, and, in the absence of any legislation authorizing any particular person to advance such expenses, it was the plain duty of the court to direct such disbursement. If this were not so, an unwilling witness could not be compelled to attend the trial and the law would become meaningless and inoperative. A poor man, who was unable to advance his witnesses' expenses, might be convicted although innocent, or a guilty man might go free, and the Uniform Act would indeed be emasculated, if not totally destroyed.

TOOZE, J., concurs in this opinion.

PERRY, J., specially concurring.

I concur in the result reached in the majority opinion as the trial court did not err in its denial of the motion of the defendant for the postponement of the trial, the showing for that purpose being wholly insufficient.

However, I am unable to agree with the majority in their construction of the Uniform Act to secure the attendance of witnesses from without the state in criminal proceedings (§§ 26-1816 and 26-1817, OCLA).

If I correctly understand the majority opinion, their holding is to the effect that the court is without authority to make an order for the payment of fees and mileage by the state to procure the attendance of a witness in a sister state either on behalf of the state or the defendant without indulging in judicial legislation. This conclusion is reached upon the basis that the uniform act as written does not provide who shall tender to the witness his ''10 cents a mile for each mile by the ordinary travelled route to and from the court where the prosecution is pending, and five dollars for each day that he is required to travel and attend as a witness'', and because §§ 26-1804 and 26-1805, OCLA, provide only for witnesses at the expense of the state if found within the state.

The majority opinion relies upon and cites the case of *State v. Fouquette*, 67 Nev 505, 221 P2d 404, 410, where in reference to the uniform act it was said:

''Although no case directly in point has been found, it is clear that this statute, providing, as it does, that specified sums for fees and mileage shall be paid or tendered to non-resident witnesses summoned to attend and testify in criminal prosecutions in this state, but not providing, either expressly or by implication, that such witnesses summoned on behalf of the defendant shall be brought in without expense to him, does not confer upon the courts of this state authority to procure the attendance and testimony of witnesses from without the state for the defendant in any case at the expense of the public.''

The above statement cites as authority *Greene v. Ballard*, 174 Ky 808, 192 SW 841, and other authorities, which when examined are all to the effect that the general rule ''seems to be well settled that the

constitutional right of defendant in a criminal case to compulsory process to procure the attendance of witnesses in his behalf does not include the right of having them brought into court at public expense'', (Bishop, New Crim Proc § 959b, and cases cited therein, and note 8 LRA NS 509).

This statement would at first glance seem determinative of the issue before us, but in examining the cases pertinent thereto, we discover that this statement as applied, with the exception of *State v. Waters,* 39 Me 54, means no more than that where no provision has been made for the payment of defendant's wit-nesses, although they are compelled to attend the trial, they cannot look to the state for payment. *Bennett v. Kroth,* 37 Kan 235, 15 P 221; *State v. Graves,* 13 Wash 485, 43 P 376. The obligation still rests upon the defendant to pay his witnesses for the services they have rendered, unless their attendance has prior approval of the trial court. *Pittman v. State of Florida,* 51 Fla 94, 41 So 385, 8 LRA NS 509; *Bennett v. Kroth,* supra; *State v. Grimes,* 7 Wash 445, 35 P 361.

That the above interpretation is correct is attested to by the statement in *Greene v. Ballard,* supra, relied upon in the case of *State v. Fouquette,* supra, which on page 845 reads as follows:

" 'A poor person residing in this state may be allowed by a court to prosecute or defend action therein without paying costs, whereupon he shall have any counsel that the court may assign him and from all officers all needful services and process without any fees, except such as may be included in the costs recovered from the opposite party.'

"The exemption from costs allowed by this section to a poor person has been held to apply to a criminal prosecution against such person, and to

> the right of appeal from a judgment of conviction; but it will be observed that neither in this section nor elsewhere is it provided that the costs incurred by such poor person in the prosecution or defense of his case shall be paid by the commonwealth.''

However, the payment of the witnesses does not become important unless it is necessary to *enforce the attendance of a material witness.* The specific question at this point, therefore, is: Does a defendant under Article I, § 11, of the Constitution of Oregon, have the right to require the advancement of witness fees for the attendance of an out of state witness when only by the advancement of the necessary fees can he compel the attendance of a witness at the trial of an issue? Article I, § 11, reads as follows:

> ''In all criminal prosecutions, the accused shall have the right to public trial by an impartial jury in the county in which the offense shall have been committed; to be heard by himself and counsel; to demand the nature and cause of the accusation against him, and to have a copy thereof; to meet the witnesses face to face, and *to have compulsory process for obtaining witnesses in his favor;* * * *'' (emphasis mine)

We need not go into the abuses practiced under English criminal procedure that led to this constitutional enactment (which provision appears in substantially the same form in the Constitution of the United States and the other states of this Union) as it is self-evident from the enactment thereof that its primary purpose was to avoid abuses that had heretofore been practiced, and that ''The right, when guaranteed by constitutional provision, is a real, substantive, and absolute one * * * of which he [a defendant] may not be deprived by the court, jury,

or legislature." (70 CJ 35, 36, Witnesses, § 5, and cases cited therein).

In 8 Words and Phrases perm ed 470, "compulsory process", as used in this declaration of rights, guarantees the accused the right to invoke the aid of law to compel the personal attendance of witnesses at the trial. *Greene v. Ballard,* supra; *Graham v. State,* 50 Ark 161, 6 SW 721; *Freeland v. State,* 34 Ala App 313, 40 So2d 339. In the command of "due process of law" the "aid of law" to compel personal attendance of witnesses, as I understand it, is the usual and customary means provided within a jurisdiction for bringing a witness before the court in which the proceedings are had under the statutory authority granted that court.

As previously stated, whether or not a witness is paid by the state or some authorized subdivision thereof, or by the defendant, or not at all, is unimportant unless such payment is necessary under the laws of the particular jurisdiction to coerce the witness to attend upon the trial. In fact, were it not for provisions of statute, a witness would not be entitled to any compensation for his services rendered in giving evidence at a criminal trial. *Morin v. Multnomah County,* 18 Or 163, 22 P 490; *Daly v. Multnomah County,* 14 Or 20, 12 P 11.

Some states provide that one in poverty may cast the burden of payment for the services of his witnesses upon the state by complying with the state's required regulations; others, regardless of the financial status of the defendant (as in this state) limit in number and as to materiality witnesses for the defendant at the state's expense. The United States leaves to the discretion of the court the number of

witnesses that may be subpoened by an indigent defendant at the expense of the government, and confines the compulsory attendance of witnesses to the jurisdiction of that court, or 100 miles from the place of trial. *United States v. Fore,* 38 F supp 142; *Crumpton v. United States,* 138 US 361; *Goldsby v. United States,* 160 US 70.

These are wholesome regulations where it is proposed by the defendant, or provided by statute, that this burden of expense is to be placed upon the public treasury, and are held not to violate the due process requirement of the constitution. See *State v. Nathaniel,* 52 LA Ann 558, 26 So 1008, relied upon by the state; also, note, 8 LRA NS 509.

From the case of *Willard v. Santa Barbara County Sup. Ct.,* 82 Cal 456, 3 Rice on Evidence 270, we read:

" 'One further proposition should be stated. . . The state owes equal and exact justice to those under its authority in all proceedings against them. It can have no higher justifiable right as to witnesses than the defendant. Nor should nor does it ask any higher right in this regard. If anything, it should be content with an inferior right. It holds the lists and appoints the president thereof, in which the contest between the people and the defendant on trial is waged. And the defendant might truly say that equal justice has not been done, when the state can compel the attendance of a witness to prove his guilt, and the defendant cannot compel the attendance of a witness in like circumstances to establish his innocence. Justice, as Lord Coke says, should be free, full, and speedy; free, because nothing is more unjust than justice which has to be bought; full, because justice ought not to halt or be maimed; and speedy, because delay is to some extent a denial of justice. See Coke, Inst. pt. 2, p. 55.' ' '

Also, in *State v. Grimes,* supra, p. 449, it is stated:

"The constitution guarantees to an accused person the right to have compulsory process to compel the attendance of witnesses in his own behalf, without the advancement of money or fees to secure this right. But it cannot be that the measure of the constitutional requirement would be filled by the mere issuance of a subpoena by the clerk, leaving to the accused the burden of making service and paying fees and mileage. Such a construction would be to give the shadow and withhold the substance; and we think the constitution can only be satisfied by the production of the witness in court without the payment of fees or mileage in advance."

Speaking on this subject, that eminent jurist Chief Justice Marshall said: "The right of an accused person to the process of the court to compel the attendance of witnesses seems to follow, necessarily, from the right to examine those witnesses; and, wherever the right exists, it would be reasonable that it *should be accompanied by means of rendering it effectual.* (emphasis mine) * * * The genius and character of our laws and usages are friendly, not to condemnation at all events, but to a fair and impartial trial; and they, consequently, allow to the accused the right of preparing the means to secure such a trial. * * * The constitution and laws of the United States will now be considered for the purpose of ascertaining how they bear upon the question. The eighth amendment to the constitution gives to the accused, 'in all criminal prosecutions, a right to a speedy and public trial, and to compulsory process for obtaining witnesses in his favor.' The right, given by this article, *must be deemed sacred by the courts,* and the article should

be so construed as to be *something more than a dead letter."* 1 Burr's Trial, 178-9. (Italics theirs).

The statutes of this state applicable to secure the attendance of witnesses within the jurisdiction of the circuit courts in criminal cases are as follows:

"§ 26-1801. Subpoena defined. The process by which the attendance of a witness before a court or magistrate is required is a subpoena."

"§ 26-1804. Issuance by district attorney for witnesses at trial. The district attorney may in like manner issue subpoenas for not to exceed *five witnesses within the state,* in support of an indictment to appear before the court at which it is to be tried; provided, however, that the court or judge thereof may, upon good cause shown, make an order allowing subpoenas to issue for a greater number of witnesses." (emphasis mine)

"§ 26-1805. Issuance by clerk for witnesses for defendant. The clerk of a court in which a criminal action is pending for trial must at all times, upon the application of the defendant, issue in blank subpoenas, under the seal of the court, and subscribed by him as clerk, *for not to exceed five witnesses, within the state,* at the expense of the state; provided, however, that the court or judge thereof may, upon good cause shown, make an order allowing subpoenas to issue for a greater number of witnesses; and provided, further, that any defendant may have subpoenas issued for any number of witnesses at his own expense without an order of the court." (emphasis mine)

"§ 26-1806. Proceeding to obtain subpoenas for more than five witnesses. If either party in a criminal action shall desire more than five witnesses, as in this act above provided, application therefor shall be made to the court or judge thereof by motion for an order directing the clerk to issue subpoenas for such additional witnesses, which motion shall be supported either by the statement of

the district attorney in writing, or by the affidavit of the defendant, which statement and affidavit shall state the names of such witnesses, their places of residence, and the facts expected to be proven by each of them; and if it shall appear from such statement or affidavit that the witnesses, or either of them, therein named, are necessary and material, the court or judge thereof shall make an order directing the clerk to issue subpoenas for such witnesses, *or so many of them as shall appear to be necessary and material to a fair, full, and impartial trial.*" (emphasis mine)

It is quite apparent in the reading of these provisions of statute that so far as this state is concerned its policy is a rule of equal justice to all, rich or poor, in the criminal courts; all, including the state, stand upon equal ground. No constitutional or statutory provision is made in this state whereby one in poverty can by the showing of such unfortunate circumstances gain a greater right than one of wealth in obtaining compulsory attendance of witnesses; likewise stands the prosecution (the state); for none have greater rights than the other. All necessary material witnesses are paid by the state.

It must now be noted under the provisions of the above statutes that the right to subpoena under compulsory process and at the expense of the state, both as to the state and the defendant, is limited to "witnesses within the state", for at the time of the passage of these acts [1864] the territorial jurisdiction of the courts for such a purpose was circumscribed by the boundaries of the state. In 1937 the legislature passed the "Uniform Act to secure attendance of witnesses from without the state". This act reaches only witnesses whose presence are required in criminal pro-

ceedings (§ 26-1815, OCLA). Generally, § 26-1816, OCLA, grants to a sister state, operating under this uniform act upon proper procedure and process, the right to compel the compulsory attendance of a material witness found within the state of Oregon at the criminal proceedings in that sister state. Section 26-1817, OCLA, generally, provides that the processes of this state, where recognized and acquiesced in by other states, may be used to bring before its criminal courts material witnesses found within a sister state, and provides that in order to compel attendance there shall be tendered to each witness his mileage and other predetermined expenses. Nowhere do we find in the statutes any authorization for the state, on behalf of the state or the defendant, to advance the necessary mileage and other expenses of witnesses required to attend from another state. If this be true, then, unless the general statutes of this state authorize the advancement of fees to witnesses beyond its borders, § 26-1817, OCLA, is for all intents and purposes a nullity. Section 26-1817, supra, reads as follows:

"If a person in any state, which by its laws has made provision for commanding persons within its borders to attend and testify in criminal prosecutions, or grand jury investigations commenced or about to commence, in this state, is a material witness in a prosecution pending in a court of record in this state, or in a grand jury investigation which has commenced or is about to commence, a judge of such court may issue a certificate under the seal of the county stating these facts and specifying the number of days the witness will be required. Said certificate may include a recommendation that the witness be taken into immediate custody and delivered to an officer of this state to assure his attendance in this state. This certifi-

cate shall be presented to a judge of a court of record in the county in which the witness is found.

"If the witness is summoned to attend and testify in this state he shall be tendered the sum of 10 cents a mile for each mile by the ordinary traveled route to and from the court where the prosecution is pending, and five dollars for each day that he is required to travel and attend as a witness. A witness who has appeared in accordance with the provisions of the summons shall not be required to remain within this state a longer period of time than the period mentioned in the certificate, unless otherwise ordered by the court. If such witness, after coming into this state, fails without good cause to attend and testify as directed in the summons, he shall be punished in the manner provided for the punishment of any witness who disobeys a subpoena issued from a court of record in this state."

No one would contend that the legislature in passing the act was making idle gesture. It was attempting by agreement with sister states to extend the previously circumscribed limits of its powers of compulsory subpoena in the interest of ascertaining the truth or falsity of a criminal assertion; and it is to be noted that the state itself has fixed the payment to be made or tendered and the provisions that there can be no coercion of the witness if fees are not paid or tendered.

While the statute itself does not say who shall advance the fees, little is the doubt that this court, or any court, would say that, should the state require the attendance of a witness on behalf of the prosecution, this statute implied the state could advance the fees it has required to be paid. Yet the statute in relation to the rights of prosecuting attorneys to subpoena witnesses (§ 26-1804, supra) provides for the issuance of subpoenas only for witnesses within the

state, leaving to the discretion of the court payment or non-payment of witness fees to such witnesses as come from beyond the boundaries of the state (§ 26-1816, supra, cited in the majority opinion). In my opinion the use of the words "within the state" in §§ 26-1804 and 26-1805, supra, means no more than "within the power of the court to coerce attendance" and should be so construed.

The power of compulsory process having been extended beyond the borders of the state in compact with sister states by legislative enactment should not be permitted to fail of its purpose. The stated policy of this state as expressed by the legislature granting to all the equal protection of its laws includes the payment of fees of material witnesses, "or so many of them as shall appear to be necessary and material to an impartial trial".

As expressed by Justice Cardozo in *Van Beeck v. Sabine Towing Co.*, 300 US 342, 81 L ed 685, 57 S Ct 452:

"* * * It would be a misfortune if a narrow or grudging process of construction were to exemplify and perpetuate the very evils to be remedied. There are times when uncertain words are to be wrought into consistency and unity with a legislative policy which is itself a source of law, a new generative impulse transmitted to the legal system."

But should such a construction as I have placed upon the words "within the state" be disregarded, still § 26-1817, supra, is an act designed by the legislature to permit a trial court to act in the furtherance of justice. Whenever by any party it is called to the attention of the trial court in proper manner that a person beyond the borders of the state is a material

witness in a case and is by the court found to be such, then the court is empowered to act. The determination of materiality is for the court, but when that issue is once determined, it is the process and order of the court that is being executed, including the "recommendation that the witness be taken into immediate custody and delivered to an officer of this state to assure his attendance in this state".

In 21 CJS 136, Courts, § 88, it is stated:

"While a court may be expressly granted the incidental powers necessary to effectuate its jurisdiction, a grant of jurisdiction, in the absence of prohibitive legislation, implies the necessary and usual incidental powers essential to effectuate it, and, subject to existing laws and constitutional provisions, every regularly constituted court has power to do all things that are reasonably necessary for the administration of justice within the scope of its jurisdiction, * * *"

Had the legislature intended that the processes of the court must be carried out by the party requesting the process, it would have so provided; its silence upon the matter, after having required payment in advance to a witness in order to enforce its demands, is significant. In view of the stated policy affecting witnesses in criminal actions, "a statutory grant of a power or right carries with it, by implication, everything necessary to carry out the power or right and make it effectual and complete, * * *." 82 CJS 633, Statutes, § 327.

For the above reasons I cannot concur fully in the majority opinion.

## On Petitions for Rehearing

*Charles O. Porter,* of Eugene, and *Ulysses G. Plummer, Jr.,* of Portland, for the petitions.

*C. E. Luckey,* District Attorney for Lane County, and W. Keith Rodman, Deputy District Attorney for Lane County, of Eugene, contra.

LUSK, J.

The defendant has filed two petitions for rehearing. In one the court is charged with committing 21 errors in its opinion, the first of which is as follows:

> "That the Court erred in stating that the third assignment of error was abandoned. The electronic record will show that counsel stated he did not intend to use any of his time for oral argument with respect to this assignment."

The third assignment of error reads:

> "The court erred in refusing to authorize the use of county funds to pay for defendant's Transcript herein."

The transcript referred to is the transcript of testimony. As the defendant secured such a transcript and made it a part of the bill of exceptions in this case, it is manifest that there could have been no merit in the assignment of error. Counsel for defendant recognized this on the oral argument, but apparently his memory of all that he said upon the subject is faulty. During the course of his rebuttal argument, as a transcription thereof shows, he was asked from the bench whether he was standing upon the third assignment of error. He stated that "The transcript is here" and that "the defendant is not prejudiced here." He was

finally asked: "In other words, you don't expect us to reverse the case on that ground, do you?" and he answered: "No, Your Honor, I don't." We think that this answer constitutes an effectual abandonment of the assignment of error.

The other alleged errors set forth in the petition all call for a reconsideration of questions which were deliberately decided after mature consideration. Some of these relate to our interpretation of the Uniform Act to Secure the Attendance of Witnesses from Without a State in Criminal Proceedings. Upon this question three of the justices were and still are of a different view from that taken by the majority. But we are all agreed that neither upon that question nor any of the others raised in the petition will any good purpose be served by a rehearing.

█ In the other petition (which is over the name of counsel who has come into the case since our decision was rendered), it is asserted "That the court erred in failing to note palpable error appearing in the record." The alleged error relates to testimony given by a police officer respecting statements made to him by the defendant after his arrest. It is claimed that the officer, testifying to what in effect was a confession, stated not what the defendant said, but what he thought. The fact is, as the record shows, that the officer testified that while he and the defendant were talking about the crime with which the latter was charged the defendant said: "I done it." The officer's testimony may have been weakened on cross-examination, but there is nothing in the record to justify the claim that he admitted that he had related what the defendant thought except as those thoughts were communicated to the witness by words. No motion to strike the testimony was made, and no exception was taken to an instruction which

treated the defendant's statement "I done it", if made voluntarily, as a confession, and no question was raised about it by counsel for appellant in his brief or on the oral argument in this court. Had the defendant at the trial moved to strike the testimony it would have been error to allow the motion.

It should be added that there is no provision in our rules authorizing the filing of two petitions for rehearing. We think that one is enough. Frequently it is too many.

The petitions are denied.

ROSSMAN, J., concurring.

I concur in the opinion written by Mr. Justice LUSK.

The original majority opinion stated that § 13-715, OCLA, is a part of our civil code and that it does not empower courts to formulate rules governing the trial of criminal charges. The specially concurring opinion of the Chief Justice cited *State v. Chase,* 106 Or 263, 211 P 920, as a precedent, showing that the power conferred by § 13-715 can be employed in criminal cases.

The power given to the courts by § 13-715 was not exercised in the Chase case in the making of a rule applicable to criminal cases only, but in its routine operation for bringing to the court needed veniremen. In that case, the defendant had been indicted for having had unlawful sexual intercourse with a child only nine years of age, and a statute required that in such instances at least one half of the trial jury must consist of women. By the time that the names of six men and five women had been drawn from the jury box, the latter contained the names of no more women. The presiding judge, at that juncture, instructed the sheriff to

draw from the regular jury list the names of ten women and order them to appear the next day. In sustaining the validity of the trial judge's order in so doing, this court's opinion expressed the belief that the statute, which directed that the trial jury should include at least six women, authorized the challenged order. It added that if the statute did not go that far, the section of our laws which is now § 13-715, OCLA, conferred the necessary power. It will be noticed that the power which was exercised by the trial judge in that instance was not concerned with criminal cases only, nor with any precept of criminal law; its concern was the veniremen. Although it was possibly unnecessary in that case to cite § 13-715, OCLA, it was not improper.

Apart from § 13-715, OCLA, I am satisfied that a court, which possesses jurisdiction in either criminal or civil matters, has inherent power to prescribe the rules necessary to enable it to perform its function of administering justice; provided, of course, that the rules which it makes are not at variance with legislation. Such has been the point of view of this court since its beginning. In *Carney v. Barrett,* 4 Or 171, the court said:

"* * * Under our system all Courts have certain inherent powers to be exercised for the purpose of methodically disposing of all cases brought before them. They can establish such rules in relation to the details of business as shall best serve this purpose, having proper regard for the rights of parties litigant as guaranteed and recognized by the Constitution and the laws. This principle is recognized in 3 Binney, 417, and 2 Sergeant & Rawle, 253, the decisions in which cases are approvingly referred to in 2 Reed's Blackstone, 439-40. We cannot discover that it conflicts with any provision of our Code."

In *Coyote G. & S. M. Co. v. Ruble,* 9 Or 121, it is said:

"It may, then, be safely affirmed, in the absence of any legislative authority, that the supreme court has the inherent right to prescribe rules for the orderly conduct of its business not contrary to law. But if this were questionable, the authority of 'every court of justice to provide for the orderly conduct of proceedings before it,' is expressly conferred by the statute. (Civil Code, sec. 884, sub. 3.)

"The rule under consideration is one of practice, is not unreasonable, nor repugnant to law, and is within the legitimate and unquestioned power of the court to establish. Like all other rules, it has been entered upon the records of this court and published in the Oregon Reports, that every one may read and know them.

"The question then occurs, what effect is to be given to this rule? Does it have the force of law, and is it equally binding on the courts and litigants?

\* \* \*

"It is not material whether the power of the court, to make rules for the orderly conduct of its business, is derived from the statute, or from the inherent power which the courts possess for that purpose, as in either case, the rule, to be valid, must not be in conflict with any constitutional provision or legislative enactment. But when deliberately made and promulgated, and not repugnant to law, the decisions are uniform that such rules have the force and effect of law, and are equally binding upon the court and litigants. The court may modify, change, or rescind any of its rules, or it may reserve the exercise of discretion for particular cases, but while they are in force, and without any such qualification reserved, they must be applied to all cases coming within their provisions. As none of these petitions were filed within the time prescribed by the rule, it follows that the rehearing cannot be granted."

Since those early pronouncements, this court has many times spoken in similar vein. *State v. Roy,* 41 NM 397, 60 P2d 646, 110 ALR 1, is an example of the decisions which hold that when a court has the power to prescribe by rule regulations governing trials, its rules are valid, even in criminal cases. The reprint of the decision in ALR is succeeded, at page 22, with an extensive annotation.

In this state, where no provision has been adopted conferring upon the courts general rule-making power, the regulations which they write, as in the Chase case, generally go no further than to fill in the interstices found in legislation governing judicial procedure.

In concurring in the majority opinion, and in the present opinion which denies a rehearing, I subscribe to no view which weakens the authority of *State v. Chase,* supra, or construes its holding as lessening a trial judge's inherent powers to prescribe all needed rules and regulations.